IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ROBIN JOHNSON, | ) | CASE NO. 1:07 CV 2029 |
| | ) | |
| Plaintiff, | ) | JUDGE KATHLEEN M. O'MALLEY |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | WILLIAM H. BAUGHMAN, JR. |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | **REPORT & RECOMMENDATION** |
| | ) | |
| Defendant. | ) | |

## Introduction

This is an action for judicial review of the final decision of the Commissioner of Social Security denying the application of the plaintiff, Robin Johnson, for supplemental security income.

The Administrative Law Judge ("ALJ"), whose decision became the final decision of the Commissioner, found that Johnson had severe impairments consisting of diabetes, back disorder, affective disorder, hypertension, and mild obesity.[1] The ALJ determined that Johnson had the following residual functional capacity:

> [T]he claimant retains the following residual functional capacity: lift and/or carry 10 pounds occasionally and less than 10 pounds frequently; stand and/or walk two hours each in a six hour workday and sit for six hours; occasional climbing, crawling and kneeling; and avoid confrontational roles.[2]

---

[1] Transcript ("Tr.") at 19.

[2] *Id.* at 17.

According to the ALJ, the above-quoted residual functional capacity rendered Johnson unable to perform her past relevant work.[3]

Based on an answer to a hypothetical question posed to the vocational expert at the hearing setting forth the residual functional capacity finding quoted above, the ALJ determined that a significant number of jobs existed locally and nationally that Johnson could perform.[4] The ALJ, therefore, found Johnson not under a disability.[5]

Johnson asks for reversal of the Commissioner's decision on the ground that it does not have the support of substantial evidence in the administrative record. Specifically, Johnson presents two issues for decision in this case:

- Did the ALJ fully and fairly evaluate Johnson's complaints of disabling pain?

- Did the ALJ fail to include in the residual functional capacity finding limitations caused by Johnson's severe mental impairment?

I conclude that the ALJ did fully and fairly evaluate Johnson's complaints of disabling pain, but he did not include sufficient mental limitations in the residual functional capacity finding. I, therefore, recommend reversal of the Commissioner's decision on Johnson's application and a remand for reconsideration of the residual functional capacity finding as to mental limitations.

---

[3] *Id.* at 19.

[4] *Id.* at 18.

[5] *Id.* at 20.

## Analysis[6]

**1.     Standard of review**

The Sixth Circuit in *Buxton v. Halter* reemphasized the standard of review applicable to decisions of the ALJs in disability cases:

> Congress has provided for federal court review of Social Security administrative decisions. 42 U.S.C. § 405(g). However, the scope of review is limited under 42 U.S.C. § 405(g): "The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive...." In other words, on review of the Commissioner's decision that claimant is not totally disabled within the meaning of the Social Security Act, the only issue reviewable by this court is whether the decision is supported by substantial evidence. Substantial evidence is " 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' "
>
> The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference.[7]

I will review the findings of the ALJ at issue here consistent with that deferential standard.

**2.     Pain as the cause of disability**

When a claimant presents pain as the cause of disability, as here, the decision of the Sixth Circuit in *Duncan v. Secretary of Health and Human Services*[8] provides the proper analytical framework.  The court in *Duncan* established the following test:

---

[6] The relevant evidence in the administrative record will be discussed in detail as part of the analysis of the issues presented for decision.

[7] *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) (citations omitted).

[8] *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847 (6th Cir. 1986).

> [t]here must be evidence of an underlying medical condition and (1) there must be objective medical evidence to confirm the severity of the alleged pain arising from that condition or (2) the objectively determined medical condition must be of a severity which can reasonably be expected to give rise to the alleged pain.[9]

Under the first prong of this test, the claimant must prove by objective medical evidence the existence of a medical condition as the cause for the pain. Once the claimant has identified that condition, then under the second prong he or she must satisfy one of two alternative tests – either that objective medical evidence confirms the severity of the alleged pain or that the medical condition is of such severity that the alleged pain can be reasonably expected to occur.[10]

Objective medical evidence of pain includes evidence of reduced joint motion, muscle spasm, sensory deficit, or motor disruption.[11] The determination of whether the condition is so severe that the alleged pain is reasonably expected to occur hinges on the assessment of the condition by medical professionals.[12] Both alternative tests focus on the claimant's "alleged pain."[13] Although the cases are not always clear on this point, the standard requires the ALJ to assume arguendo pain of the severity alleged by the claimant and then determine

---

[9] *Id.* at 853.

[10] *Felisky v. Bowen*, 35 F.3d 1027, 1039 (6th Cir. 1994).

[11] *Id.* at 1037 (quoting 20 C.F.R. § 404.1529(c)(2)).

[12] *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 528, 531 (6th Cir. 1997).

[13] *Duncan*, 801 F.2d at 853.

-4-

if objective medical evidence confirms that severity or if the medical condition is so bad that such severity can reasonably be expected.

A claimant's failure to meet the *Duncan* standard does not necessarily end the inquiry, however. As the Social Security Administration has recognized in a policy interpretation ruling on assessing claimant credibility,[14] in the absence of objective medical evidence sufficient to support a finding of disability, the claimant's statements about the severity of his or her symptoms will be considered with other relevant evidence in deciding disability:

> Because symptoms, such as pain, sometimes suggest a greater severity of impairment than can be shown by objective medical evidence alone, the adjudicator must carefully consider the individual's statements about symptoms with the rest of the relevant evidence in the case record in reaching a conclusion about the credibility of the individual's statements if a disability determination or decision that is fully favorable to the individual cannot be made solely on the basis of objective medical evidence.[15]

The regulations also make the same point.

> We must always attempt to obtain objective medical evidence and, when it is obtained, we will consider it in reaching a conclusion as to whether you are disabled. However, we will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work ... solely because the available objective medical evidence does not substantiate your statements.[16]

Where the objective medical evidence does not substantiate the claimant's subjective complaints, the ALJ must pass on the credibility of the claimant in making those

---

[14] Social Security Ruling (SSR) 96-7p, Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements, 61 Fed. Reg. 34483 (July 2, 1996).

[15] *Id.* at 34484.

[16] 20 C.F.R. § 416.929(c)(2).

-5-

complaints.[17] The ALJ's findings as to credibility are entitled to deference because he has the opportunity to observe the claimant and assess her subjective complaints.[18]

The regulations set forth factors that the ALJ should consider in assessing credibility. These include the claimant's daily activities; the location, duration, frequency, and intensity of the pain; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of medication; and treatment or measures, other than medication, taken to relieve pain.[19]

As a practical matter, in the assessment of credibility, the weight of the objective medical evidence remains an important consideration. The regulation expressly provides that "other evidence" of symptoms causing work-related limitations can be considered if "consistent with the objective medical evidence." [20] Where the objective medical evidence does not support a finding of disability, at least an informal presumption of "no disability" arises that must be overcome by such other evidence as the claimant might offer to support his claim.

The specific factors identified by the regulation as relevant to evaluating subjective complaints of pain are intended to uncover a degree of severity of the underlying impairment not susceptible to proof by objective medical evidence. When a claimant presents credible

---

[17] *Walters*, 127 F.3d at 531.

[18] *Buxton*, 246 F.3d at 773.

[19] 20 C.F.R. §§ 404.1529(c)(3)(i)-(vii).

[20] 20 C.F.R. § 404.1529(c)(3).

-6-

evidence of these factors, such proof may justify the imposition of work-related limitations beyond those dictated by the objective medical evidence. The discretion afforded by the courts to the ALJ's evaluation of such evidence is extremely broad. A reviewing court may not disturb an ALJ's credibility determination absent compelling reason.[21]

If the ALJ rejects the claimant's complaints as incredible, he must clearly state his reasons for doing so.[22] The ALJ in a unified statement should express whether he or she accepts the claimant's allegations as credible and, if not, explain the finding in terms of the factors set forth in the regulation.[23] The ALJ need not analyze all seven factors identified in the regulation but should provide enough assessment to assure a reviewing court that he or she considered all relevant evidence.[24] The articulation should not be conclusory;[25] it should be specific enough to permit the court to trace the path of the ALJ's reasoning.[26]

**3.    Substantial evidence supports the ALJ's evaluation of Johnson's complaints of disabling pain.**

I observe initially that the ALJ in this case found that Johnson had a substantially diminished residual functional capacity. Specifically, he limited her to sedentary work with

---

[21] *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001).

[22] *Felisky*, 35 F.3d at 1036.

[23] 20 C.F.R. § 404.1529(c)(3).

[24] *Blom v. Barnhart*, 363 F. Supp. 2d 1041, 1054 (E.D. Wisc. 2005).

[25] SSR 96-7p, 61 Fed. Reg. at 34384.

[26] *Blom*, 363 F. Supp. 2d at 1054.

the additional restrictions of occasional climbing, crawling, and kneeling.[27] Accordingly, although the ALJ did not find Johnson disabled, he nevertheless gave substantial, although not controlling, deference to her complaints of pain and to her treating physician's assessment of limitations.

Turning to the legal framework for analysis of pain as a cause of disability, the parties do not contest the existence of an underlying medical condition that can cause pain. Moving on to the second prong of the *Duncan* test, there is minimal objective medical evidence to confirm the severity of the pain to the degree alleged by Johnson. There is no evidence of sensory deficit, motor disruption, muscle weakness, reflex abnormalities, or muscle atrophy.[28] There is one reference to muscle spasms, which appears in an evaluation done by the treating physician, Emmanuel Elueze, M.D.[29] No reference to such spasms appears in his treatment notes, however. Michael Harris, M.D., who performed a consultative examination, found some limitations on range of motion in the spine.[30] He also reported, however, that Johnson had "exaggerated pain behaviors throughout the examination, especially when I ranged her."[31] The evidence as to this part of the *Duncan* test, therefore, does not favor greater limitations than those imposed by the ALJ.

---

[27] Tr. at 17.

[28] *Id.* at 157.

[29] *Id.*

[30] *Id.* at 162.

[31] *Id.*

As to the other test under the second *Duncan* prong, the presence of an objectively determined medical condition of a severity that can reasonably be expected to give rise to pain of the severity alleged, the record does contain a report of an MRI.[32] This report does disclose "moderately severe posterior elements degenerative changes at L3-S1 levels, most pronounced at L4-S1 levels."[33] The report goes on to identify "a focal central disk herniation superimposed on diffuse broad-based disk-osteophyte formation with mild to moderate fecal sac compression centrally"[34] at the L5-S1 level.[35] Under the *Duncan* test, however, nerve root compression in the spine caused by a herniated disk does not necessarily require a finding of disabling pain,[36] and although Dr. Elueze opined as to limitations greater than those found by the ALJ, his treatment notes indicate that he was primarily treating Johnson for diabetes, and the notations as to back pain are sporadic and not detailed.[37]

The assessment of the correctness of the ALJ's pain analysis, therefore, must turn on his findings as to credibility. As previously noted, the ALJ did give Johnson's allegations of pain substantial credibility by adopting severely reduced residual functional capacity. Further, consistent with best practices, the ALJ did provide a unified statement as to

---

[32] *Id.* at 240.

[33] *Id.*

[34] *Id.*

[35] *Id.*

[36] *Blacha v. Sec'y of Health & Human Servs.*, 927 F.2d 228, 230 (6th Cir. 1990).

[37] Tr. at 203, 207, 210, and 217.

credibility.[38] The ALJ's finding is supported by the consultative examination of Dr. Harris, which reported "exaggerated pain behaviors" and "multiple Waddell's signs,"[39] evidence of non-physical origins of pain.[40] The medical expert, Richard Watts, M.D., opined that Johnson could perform a limited range of sedentary work,[41] which substantially credited but did not totally accept Johnson's allegations of disabling pain. Finally, in reviewing the treatment notes of the treating physician, Dr. Elueze, there are only sporadic references to complaints of back pain over a treating period that extended approximately two years. Although Dr. Elueze saw Johnson numerous times during this period, there appear only four references to back pain.[42] The ALJ could reasonably conclude, as he did, that although Johnson's back pain was real and debilitating, it did not totally disable her.

Johnson takes the ALJ to task for not attaching greater significance to her taking of Percocet to relieve the pain. The only reference that I can find to Percocet appears in a treatment note of June 6, 2005, in which Dr. Elueze indicates "continue Percocet."[43] I can find no reference to the original prescription or the circumstances surrounding its prescription in the treating physician's notes. Johnson, therefore, appears to have been on Percocet for

---

[38] *Id.* at 17.

[39] *Id.* at 162.

[40] *Id.* at 278.

[41] *Id.*

[42] *Id.* at 203, 207, 210, and 217.

[43] *Id.* at 217.

a short period of time as of the date of the hearing before the ALJ in July of 2005. Under these circumstances, Johnson's taking of Percocet does not deprive the ALJ's credibility finding of substantial evidence. Because a reasonable mind might accept the evidence in the administrative record as adequate to support the ALJ's finding, compelling reason does not exist to disturb that finding on judicial review.[44]

**4.     Substantial evidence does not support the ALJ's residual functional capacity finding as to mental limitations.**

The ALJ found that Johnson had the severe impairment of affective disorder.[45] As to the evaluation of her mental impairments and the limitations caused thereby, he accepted the conclusions of Kenneth Felker, Ph.D., a consultative examiner, and the state agency reviewing psychologist, Bob Stinson, Psy.D.[46] The residual functional capacity finding contained only one limitation relating to the mental impairment – "avoid confrontational roles."[47] Although this limitation is ambiguous in the context of the ALJ's decision, his examination of the vocational expert indicates that avoid confrontational roles means avoiding "arbitration, negotiation, supervise [sic], things of that nature, ..."[48]

---

[44] *Smith*, 307 F.3d at 379.

[45] Tr. at 19.

[46] *Id.* at 171-73.

[47] *Id.* at 17.

[48] *Id.* at 283.

It appears that Dr. Elueze, the treating physician, diagnosed Johnson with depression in January of 2004 and began treating her for depression at that time.[49] In May of 2004, Dr. Felker performed a consultative examination.[50] Dr. Felker diagnosed Johnson as having depressive disorder.[51] He opined that she had mild to moderate restrictions on ability to concentrate; greater difficulty with sustained tasks; moderate impairment of her ability to relate to the general public, work peers, and supervisors; and moderate impairment of her ability to tolerate the stress of employment.[52]

In July of 2004, Dr. Stinson performed a mental residual functional capacity assessment based upon a review of the medical records, including Dr. Felker's psychological report.[53] Dr. Stinson found Johnson mildly limited in her ability to understand or remember detailed instructions, the ability to carry out detailed instructions, the ability to maintain attention and concentration for extended periods, her ability to complete a normal workday and workweek without interruption from psychologically based symptoms and to perform at a consistent pace without unreasonable rest periods, and the ability to interact appropriately with the general public.[54] Dr. Stinson went on to state that Johnson's

---

[49] *Id.* at 204.

[50] *Id.* at 167-70.

[51] *Id.* at 169.

[52] *Id.*

[53] *Id.* at 171-73.

[54] *Id.* at 171-72.

allegations are consistent with Dr. Felker's opinion and that Dr. Felker's opinion should be given weight.[55]

Based upon these evaluations, which the ALJ accepted, I would anticipate that the ALJ would have adopted limitations to low stress work, simple repetitive tasks, and limited interaction with supervisors, coworkers, and the public.  He did not do so, however.  Avoiding confrontational roles, as defined by the ALJ in the hearing transcript, comprises a subset of limited interaction with supervisors, coworkers, and the public.  This narrow limitation does not incorporate the broader limitations appropriate to the evaluations of Dr. Felker and Dr. Stinson, which the ALJ states that he accepted.[56]

Additionally problematic is the ALJ's questioning of the vocational expert.  The first hypothetical posed to the vocational expert included all of the limitations eventually incorporated into the residual functional capacity finding except for the mental limitation.[57]  The hypothetical provided for a limited range of sedentary work.  In response to this hypothetical, the vocational expert identified several jobs that Johnson could do with numbers statewide and locally sufficient to sustain a finding of no disability at step five.[58]

---

[55] *Id.* at 173.

[56] *Id.* at 17.

[57] *Id.* at 280-81.

[58] *Id.* at 281.

The second hypothetical provided for a limited range of light work.[59] In response, the vocational expert replied that that residual functional capacity would permit Johnson to perform her past relevant work.[60] The ALJ then posed a third hypothetical in which the individual would miss four more days per month because of pain.[61] The vocational expert responded that no work would be available with that limitation.[62]

Johnson's counsel posed one hypothetical to the vocational expert, which added to the ALJ's first hypothetical a limitation that she could remember and carry out routine and predictable tasks only in a structured environment.[63] The term "structured environment" was not defined. The vocational expert expressed confusion about the term "structured environment" but responded that if a structured environment equated with a sheltered environment, then no work would be available.[64]

Thereafter, the ALJ added a limitation to no confrontational role, "as in arbitration, negotiation, supervise of things of that nature, ..."[65] He imposed this limitation, however, not on hypothetical one, the limited range of sedentary work, but on hypothetical number two, the limited range of light work. In response, the ALJ stated that it would not change his

---

[59] *Id.* at 281-82.

[60] *Id.* at 281.

[61] *Id.* at 282.

[62] *Id.*

[63] *Id.*

[64] *Id.* at 283.

[65] *Id.*

-14-

previous answer to hypothetical two – that is, Johnson would be capable of her past relevant work.[66]

Accordingly, the ALJ never put to the vocational expert a hypothetical incorporating the residual functional capacity finding adopted in this case. Perhaps it can be inferred that the vocational expert's answer to hypothetical number one with the limitation on confrontational roles would have been the same as given to the hypothetical without that limitation. That is not clear from the record, however. Furthermore, as previously stated, a limitation to no confrontational roles does not fully incorporate the mental limitations identified by Drs. Felker and Stinson, which the ALJ accepted. I must, accordingly, conclude that the residual functional capacity finding and the finding at step five based upon the testimony of the vocational expert does not have the support of substantial evidence in the record. This case should be remanded for reconsideration of the residual functional capacity finding and for further testimony of the vocational expert in light of the reconsidered finding, as to whether a substantial number of jobs exists in the national economy that Johnson could perform.

It appears that the ALJ made an alternative finding that Johnson had no non-exertional limitations and, as such, she was not disabled by application of the medical-vocational guidelines in Appendix 2. In light of the evaluations of Dr. Felker and Dr. Stinson, and the ALJ's recognition that Johnson did have some mental limitations, at least to the extent that

---

[66] *Id.* at 284.

she should avoid confrontational roles, that alternative finding does not have support of substantial evidence in the administrative record.

## Conclusion

Based on the foregoing analysis, I recommend the reversal of the decision of the Commissioner denying Johnson's application for supplemental security income and the remand of the decision for reconsideration of the residual functional capacity finding as to mental limitations and the issue of whether or not a substantial number of jobs exists locally and nationally that Johnson could perform.

Dated:   August 12, 2008                                    s/ William H. Baughman, Jr.
                                                            United States Magistrate Judge

## Objections

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within ten (10) days of receipt of this notice.  Failure to file objections within the specified time waives the right to appeal the District Court's order.[67]

---

[67] *See*, *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also*, *Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).